Judge Robertson
delivered the opinion of the Court.
On the 4th day of May, 1807, Thomas M’Clanahan made and published his last will. On the l?th of September, 1808, he annexed a codicil, and in-February, 1809, the will and codicil were proved and admitted to record in the county cpurt of Boufbon, where the testator lived and died.
Clauses of the “n ^iuch^the claim of Keníle¡?.V ^ wife 18 oun e
By this testament, a large estate, real and personal, was distributed specifically, among a large tribe of ¡children and grand children; and among other devises, there is one to Wm. M’Clanahan,of 100 acres of land, and another to Polly M’Clanahan of 50 acres. Eli Kennedy purchased this 100 acres from Wm. M’Clanphan for fifteen dollars per acre, and obtained a deed therefor.
The will contains the following instruction to the executor, “to dispose of all my estate, both real and personal, not heretofore disposed of, and the money arising therefrom, to retain in his hands for the purpose of making good any land that may he lost out of any fiat I have bequeathed to my children,” &c.
The codicil contains the following declaration: “I do hereby will and appoint the proceeds of said sale of said residue of my estate, as a fund to satisfy the devisees of my said last will and testament, and to be in lieu of any losses of land which have already, or may hereafter happen in any of the lands by my said will devised; and it is hereby expressly declared to be my last will, that said proceeds of said sale by my executor, shall be appropriated by him to the purpose of repairing and making good the loss of certain lands to certain of the devisees in my last will mentioned, out of whose shares respectively, a loss of land has already happened, since the making of my said last will,” &c.. The codicil then declares, “It is also my will and desire, that if the fund hereby provided, in the hands of my executor, for the purpose of making good to my said devisees any losses in lands, which have already, or may hereafter happen, should at any time prove deficient for that purpose, the balance of losses unsatisfied, shall be made up to the devisees so loosing, by a contribution of all the devisees to my said last will; the said contribution to be made in proportion to the value of the several shares of land devised to them,” &c. “And to prevent disputes and difficulties in ascertaining the value of any shares of land in my said will devised to any of my devisees, which shares have already, or may hereafter happen to be lost, I hereby constitute the following as the mode of ascertaining said value: my said executor and those of my said devisees *334 now have, or may hereafter loose any part of the land 1° ^lem devised, shall each select and choose two disinterested and honest men, with power in said refer-to choose an umpire, and they ora majority of them, with their umpire, shall ascertain the value of the land so lost, and certify the same under their hands and seals,” &c. “which value so ascertained shall be paid by my executor accordingly,” &c., “and it is hereby further provided that the value of any share so lost, for which contribution is requisite, and the value of such devisee’s share, who has to contribute, in order to ascertain the amount of contribution from each, shall be ascertained in the same manner and by the same number of disinterested men and their umpire, chosen by the party who has lost and the party contributing,” &c. &c.
Bill of Kennedydnd wife
Answer of defendants.
Decree of the circuit court, granting relief to the compl’nts.
The appellees, Eli Kennedy and his wife, (the devisee of the fifty acres,) filed their bill in chancery", against the devisees and executor, for contribution, for the 100 acres devised to William M’Clanahan,and the 50 acres devised to the appellee, Polly, which tracts they allege had been recovered by Henderson’s heirs, in suits prosecuted for that purpose. They charge that the fund in the executors-hands had failed; that the executor and the appellees had ascertained, by the award of arbitrators, that the land lost was worth $J20 per acre; and that the devisees had refused to contribute or choose arbitrators to adjust the ratio of contribution. They pray a decree for contribution, for the loss of the 50 acres, and also, for that of the 100 acres; claiming as to the latter, to stand,in equity, in the place of the devisee and vendor, W. M’Clam ahan.
The devisees, who are very numerous,are all brought before the court; in their answers, some of them admit the loss of the land, and some of them insist that they had lost land, and some that they had contributed to the losses of others; and all of them deny that the appellees ever proposed to them to choose arbitrators, to adjust the values of their lands, and the ratio of contribution. They all seem to think that the lost lañé should be estimated, as wood land, at the eviction. Record evidence being famished of the loss of the 150 acres *335 of land, and that the successful claimant had recovered rents feu the occupancy of the testator, who had lived on a part of the lost land many years; the circuit court determined, in its interlocutory decree, that the appellees were entitled to the value of the 150 acres of land, and gave the appellants leave until the succeeding term of the court, to choose referees accord5ing to the will, for adjusting the amount of contribution. The appellants having failed or refused to make the election, the court appointed commissioners to value the 150 acres, and the tracts respectively devised to the appellants. The court being undetermined whether the lands should be valued at the time of the testator’s death, or at that of the loss of the 150 acres, directed the commissioners to assess the values at each period. On the return by the commissioners, of a very detailed and elaborate report, the court selected, as the proper criterion for its final decree, the valuations at the date of the loss of the land, and on this basis, made its decree, by which the appellees were allowed the assessed value of the 150 acres when recovered from them, and the amount of profits recovered for the occupancy of the testator.
a deed for land transfers privity of éstate, all antenants^noí8" dent to the freehold, the oltí}e co-'extenslve with that of grantor,
The main question involved in the consideration of the case is, whether the court selected the proper date for valuing the land. There are, however, subordinate points presented, which will be first noticed.
It is urged that the appellees had no right to. recover from the devisees the value of the 100 acres conveyed to Kennedy by Wm. M’Clanahan. It is true that they had a legal remedy against the heirs of W. M’Clanahan, on the covenant in the deed; and that, therefore, against these heirs alone, (there being full remedy at law,) the chancellor would not entertain jurisdiction, But it is equally true that a deed for land transfers to the assignee, by privity of estate, all the antecedent warrantees, covenants and pledges incident to the freehold. The will of Thos. M’Clanahan guarantied indemnity to the devisees of his lands. His whole tate was pledged for the security of every part. Wm. M’Clanahan, therefore, had a perfect right in equity, to contribution from the other devisees, for the value of the 100 acres devised to him. By conveying it to *336 Kennedy, that equity passed to him. And for this fed-son and to prevent circuity and multiplicity of suits* he had the right, by making all the devisees defendants* to call on them in chancery for contribution “pro roia,” to him,instead of Wm. M’Clanahan. But he has no right, certainly, in this way to recover more than Wm. M’Clanahdn would be entitled to recover, that is, the value of the land. If he paid to M’Clanahan more than the assessed value* the overplus he can demand from M’Clanahan’s heirs alone.
Á devise of land, by the parcel, the devisee entitled to any surplus; and if lost, to contribution from other devisees the will having charged all the estate, devised with such losses.
■When the will (jointsout a inode, by ■which values are to be assessed, and fcontributions made, among devisees, and there are infants, bill in chancery is the proper remedy for failure to comply.
There was a surplus in the ttactlost by Kennedy and Wife, and there are surpluses in some of the tracts of other devisees. The whole quantity of each tract was assessed, and td this the appellants object. We aré unable to feel the force of this objection. Each devisee was entitled to all the land included in the boundary of the tract devised to him. If there were surplus, it was his; if there were any deficit, he must sustain the loss. The entire tract, whether more or less than the estimated quantity, belonged to the devisee. For whatever quantity he lost, he had a right to indemnity, and the other devisees were bound to contribute according to the actual value of the devises to them respectively. The one had a right to demand and the other was bound to pay, in proportion to the actual value of the property devised to each. This value would be augmented by a surplus, and diminished by a deficit.
It is also objected, that a suit in chancery, should not be sustained* as the will appointed another mode of settlement. This objection is more specious than solid. Waiving other answers that might be made to it, there is one, which alone ought to be satisfactory. There is a multitude of persons interested in the questions to be disposed of in this case: and some of them are infants. It would be therefore, very-difficult, if not impossible, to make a valid settlement, between such parties, without á decree by the chancellor. And the plaintiffs in error, cannot complain, that the defendants, have called on the chancellor* to compel a submission to the arbitration of persons to be chosen according to the directions of the will. The court decreed ' such election, and reference* and the plain- *337 tins in error, have forborne to make any effort for an adjustment, in sucha mode, it is not probable that they would have done it without a suit. The defendants allege, that they had refused to select before the bill was filed; and súbsequent events corroborate that allegation. How then is the right of the defendants, and the liability of the plaintiffs in error to be ascertained and 'enforced? By a suit in chancery alone. This is compulsory, and will bind all parties-,infants and adults. Without it-, they would not act, and their acts might not be valid, if they had chosen to submit to arbitration.
Rents recovdevtsee°fbrthe the occupancy of the tea*ator’are to ted°by theSa' same mode of contribution io lost ^andf* It was a debt due by testacharge upon his whole estáis,
f he vall:ie thelanr3 whets devise took effect; the measure of the recovery of the devisee, upon the loss of the laud, and the amount to be made up by contribution.
*337 The plaintiffs in error; aré not Satisfied with the ailowance to the defendants of the amount paid for th'é occupancy by the testator. They are surely entitled to this, if they have right to any thing. They had a right to the 150 acres of land; unincumbered. The tents due for the use of the land, by the testator; were a charge on all the devisees. Any one who paid this debt, had a right to demand contribution of all the others. The will intended to secure to each devisee, the entire value of the property devised to him. If unexpectedly, the thing devised to any one; should be incumbered, the whole estate of the testator, was responsible for its extrication. Otherwise; thfe obvious intention of the will; might be frustrated. If the 150 acres had been sold for the debt of the testator; it fcould not be doubted, that his estate stood pledged for the indemnity of the defendants. Their claim to bé re-imbursed for payments madé for rents due; by thé testator, is equally as clear, and as strong. And it seems to us, that it is as indisputable, as their right td contribution, for the loss of the land, by a paramount title. But the principal objection to the decree, as already stated, is, that it has allowed to the defendants the value of the land at the time of loosing it. The plaintiffs in error; insist that the defendants are entitled only to what the land was worth; at the death of the testator, and that the devisees who are bound to contribute, should do so according to the value of their legacies estimated at the same time. In this they are right. The value of the land, at the time the devise of it took effect, is, what is “to be made good” to the *338 devisee. This was what was given, and what mils'! be secured. A devises to B, 100 acres of land, arid toC, 200, when the titles vest by the will, thm 100 acres, are worth $1000, and the 200 acres, are worth $2000. Then $1000, is given to A, and $2000, to C. The will directs, that, if either shall loose his land, it shall be made good to him by contribution from all the devisees, there being many others. B looses his 100 acres, twenty years after the death of the testator; at the time of eviction, it is worth $50 per acre. The land of C, is still worth no more lhan $10 an acre, consequently, the devise to B, has increased from $1000 to $5000, in value, whilst that to C of $2000, has remained stationary, at $2000. Now what shall C contribute, as his rateable proportion, for B’s indemnity, or in other words, to make B’s land good to him? Surely not more than his distributive part of the $1000, devised to B, and which he has lost. If he shall be compelled to pay his distributive part of $5000, he will be impoverished, and B enriched; and his $2000 devise, will be reduced to perhaps $500, to magnify the $1000 devise to $5000. This cannotbe just. It neVer was in the contemplation of the testator.
Suppose the devise be of slaves. The father devises to his son John, a grown man slave, worth $500, and to his son James, an infant female worth only $100; he directs, that if any of his devisees, shall loose the thing devised, by the assertion of a better title than his, all the other devisees shall make the loss “good to him.'’'’ Thirty years after the testator’s death, (such a thing can happen) James looses his slave, and several children which she has borne. They are worth $2000. By what standard of value shall John’s contribution be regulated? Certainly not by the $2000. Many other cases might be supposed for illustration. If the testator had even sold and warranted the land, (which he devised) his heirs or devisees would be responsible, only for the value at the date of the conveyance. Besides, the codicil shews clearly, that the value at the time of the testator’s death, should be the criterion of contribution. Some Of the land, devised by the will,had been lost before the codicil was executed. And therefore, the devises of lands, which had been or might thereafter be lost *339 are required to be made good. How are those which had been lost before the testator’s death, to be made good? Certainly, by paying their value at the time the will took effect, and not any prospective The same rule should be applied to every case. It is immaterial when the land may have been lost, or when the suit may have been brought for contribution, the rate of contribution, is to be ascertained by the value of the land, as well of the contributors, as of the looser, at the time the titles vested by the will. This construction, accords with the letter and the intention of the will, and with all the analogies of the law. And any other construction, might not only lead to manifest injustice, and inequality, but to an entire frustration of the testator’s will. This rule is unexceptionable. It secures to each, as much as was given to him, and exacts contributions, in proportion to what was received. It will place the devisees, as was intended, in “statu quo,” that is, where the testator left them, and the will found them, and where the testator chose to fix them. He intended that the value of what he gave, should be preserved to the donee. But he never could have wished, that his estate and his devisees, should be bound for more than he gave, which would be the case, if any adventitious accession of value must be a burthen on his estate. It is not necessary to pursue this subject further. The value of the 150 acres, as they stood, wbeu the testator died, whether improved or unimproved, belonged to the devisees of the two tracts. The defendants in error should not be charged with improvements made by the testator, they passed with the land, and constituted a portion of its value.
If rent has been paid by losing land 'under this wi11» thevaltestator’s death, and from addedtothe rent paid fon the ooeupan* oy ^ *16 tes' tutor, the ag, gregate claim for indemnity and the sum to be contributed.
*339 If the defendants have been compelled to pay to the successful claimant rents for their use of the laud lost, or tor its occupancy by William M’Clanahan, (as the devisees, have enjoyed the use and value of the lands devised to them) they should have interest on the value of the land. In this event, the value of the lost land, at the death of the testator, and legal interest thereon, from that time, together with the amount paid for the occupancy, by the testator, will constitute the aggregate claim of the defendants for indemnity, by the contribution of such of the other devisees, as shall be found to be responsible.
Decree reversed.
Crittenden, for plaintiffs; Talbot, for defendants.
All who may be infants in the case, should appear by guardians ad litem. As to any ulterior question which might arise between the defendants, and William M’Clanahan’s heirs, under the deed of their father, we have nothing to say.- No such question has been raised in this case.
The remedy against the heirs, if it should ever be necessary and allowable to assert it, is purely legal.
The decree is reversed, and the cause remanded, with instructions to render such decree, on a proper presentation of the case as shall be just and equitable, making the principles of this opinion, so far as they shall be applicable, the basis of the reformed decree.